1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    YOLANDA PITRE,                            Case No. 24-cv-06309-JST

8                    Plaintiff,
                                               **ORDER GRANTING MOTION TO**
9          v.                                  **DISMISS**

10   KEVITA, INC.,                             Re: ECF No. 24

11                   Defendant.

12

13         Before the Court is Defendant KeVita, Inc.'s motion to dismiss.  ECF No. 24.  The Court

14   will grant the motion.

15   **I.      BACKGROUND**

16         For the purpose of deciding this motion, the Court accepts as true the following allegations

17   from the amended complaint.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  KeVita

18   manufactures, markets, and sells a beverage it calls "Sparkling Lemonade with Prebiotics."  ECF

19   No. 21 ¶ 1.  The product's packaging features the phrase "prebiotics for gut health."  *Id.* ¶ 4.  It

20   further states:  "Trust your gut and grab the deliciously refreshing taste of real lemons with

21   prebiotics, your tummy and taste buds will thank you!"  *Id.*

22         Plaintiff Yolanda Pitre purchased the product believing that it contained prebiotics that

23   were beneficial for her gut health.  *Id.* ¶ 16.  Pitre alleges, however, that the product is not, in fact,

24   beneficial for gut health.  Each can of KeVita's Sparkling Lemonade contains three grams of

25   dietary fiber derived from acacia, also known as gum arabica, and four grams of added sugars.  *Id.*

26   ¶ 32.  According to the amended complaint, a study has suggested that gum arabica can provide

27   prebiotic benefits when taken at a dose of 10 grams per day for four weeks, *id.* ¶ 33, so KeVita's

28   Sparkling Lemonade "does not contain a sufficient quantity or quality of prebiotics to have any

United States District Court
Northern District of California

meaningful impact on gut health." *Id.* ¶ 40. And, in order to ingest 10 grams of fiber from KeVita's product, consumers would need to drink more than three cans per day, which also would require consumption of 12 grams of added sugars per day. *Id.* ¶ 34. A diet that is high in added sugars can eliminate healthful bacteria in the gut. *Id.* ¶ 35. "Thus, any hypothetically beneficial effects to the gut microbiome derived from consuming enough cans of Product to reach the 10-gram dosage at which acacia shows potential as an effective prebiotic supplement would be reduced or eliminated by the detrimental effects to the gut microbiome and other adverse health effects of 12 grams of added sugars." *Id.* ¶ 36. Moreover, experts say it is not clear that fiber added to processed foods and drinks has the same health effects as fiber from whole foods. *Id.* ¶ 37.

Pitre filed this action on September 6, 2024 on behalf of herself and a putative class of consumers who purchased KeVita's Sparkling Lemonade. ECF No. 1. She filed an amended complaint on October 30, 2024. ECF No. 21. She asserts claims pursuant to: (1) California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); (2) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); and (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

KeVita now moves to dismiss. ECF No. 24. Plaintiff opposes the motion, ECF No. 31, and KeVita filed a reply. ECF No. 34. The Court held a hearing on February 13, 2025. ECF No. 35.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations need not be detailed, but the facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where a plaintiff's causes of action are "grounded in fraud," *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d, 956, 967 (9th Cir. 2018), the Court also must apply the heightened pleading requirements of Rule 9(b).[1]  "When UCL, CLRA, and FAL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege 'the particular circumstances surrounding [the] representations' at issue." *In re Arris Cable Modem Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)); *see also Peviani v. Nat. Balance, Inc.*, 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011); *Haskins v. Symantec Corp.*, No. 13-cv-1834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013).  This includes "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

## IV.    DISCUSSION

KeVita argues that Pitre has failed to plausibly allege the theory underlying all of her claims, namely that KeVita's Sparkling Lemonade contains too little fiber and too much added sugar to be beneficial to gut health.  Kevita further argues that Pitre has not plausibly pled that

---

[1] The parties agree that Rule 9(b) applies to Pitre's claims.  ECF No. 24 at 14; ECF No. 31 at 8–9.

reasonable consumers would be misled by the challenged label statements, that some of the challenged label statements are nonactionable puffery, that Pitre has not plausibly pled her UCL claim, and that she has not pled entitlement to non-monetary relief.

### A.    Request for Judicial Notice

The Court starts by addressing KeVita's request for judicial notice. KeVita asks the Court to take judicial notice of (1) the complete labels for KeVita's Sparking Lemonade products, and (2) three scientific publications that Pitre cites in the complaint. ECF No. 25. Pitre opposes the request. ECF No. 32.

#### 1.    Labels for KeVita's Sparkling Lemonade Product

KeVita asks the Court to take judicial notice of "a complete, high-resolution, color copy of the Product's labeling." ECF No. 25 at 3. As an initial matter, KeVita does not explain why the pictures of product labels in Pitre's complaint are insufficient, or what benefit KeVita's offered version of the label will provide, other than to state that "[t]he Court and parties will benefit from having complete images of the Products' labeling to assess Plaintiff's claims." ECF No. 25 at 3. To the Court's eye, the labels depicted in Pitre's complaint contain all the information necessary to resolve this motion. Moreover, KeVita "does not provide any information that would authenticate the images . . . or confirm that products with these labels were actually sold during the class period." *Bruton v. Gerber Prods. Co.*, No. 12-cv-02412-LHK, 2014 WL 172111, at *5 (N.D. Cal. Jan. 15, 2014) (denying request for judicial notice of food product labels). Accordingly, the Court denies KeVita's request to take judicial notice of the product labels.

#### 2.    Publications

Pitre also opposes the Court taking judicial notice of the scientific publications, although she appears to agree that "[t]he Court may take judicial notice of the studies because they are incorporated by reference into the complaint." ECF No. 32 at 6 (quoting *Graham v. Cent. Garden & Pet Co.*, No. 22-cv-06507-JSC, 2023 WL 2744391, at *2 (N.D. Cal. Mar. 30, 2023)).

The parties appear to confuse judicial notice with incorporation-by-reference. "Although often conflated," the two are distinct. *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1061 (C.D. Cal. 2012). Pursuant to the incorporation-by-reference doctrine,

1

2

3

4

5

> Certain written instruments attached to pleadings may be considered part of the pleading. *See* Fed. R. Civ. P. 10(c). Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).

6    *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted); *see also Tunac v.*

7    *United States*, 897 F.3d 1197, 1207 (9th Cir. 2018) ("Although mere mention of the existence of a

8    document is insufficient to incorporate the contents of a document, the document is incorporated

9    when its contents are described and the document is integral to the complaint.") (internal

10   quotations omitted). However, "the mere mention of the existence of a document is insufficient to

11   incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th

12   Cir. 2010) (citation omitted). Because the parties agree that the Court may consider the two

13   studies and the article that are the subject of KeVita's request, the Court considers them under the

14   incorporation-by-reference doctrine.

15          Pitre states in her opposition that "[i]f the Court is inclined to incorporate any of the

16   studies, it should incorporate all of the studies for the sake of completeness." ECF No. 32 at 7.

17   But Pitre does not make a showing that the contents of all 14 of the studies referenced in the

18   amended complaint are "described" in the complaint or that all 14 studies are "integral to the

19   complaint." *Tunac*, 897 F.3d at 1207. Nor does Pitre provide the studies in question.

20   Accordingly, the Court declines to take judicial notice of the remaining 11 studies.

21          **B.    Pitre's Misrepresentation Theory**

22          KeVita's first argument is that Pitre's claims "fail at the threshold" because her theory of

23   misrepresentations is contradicted by the studies she cites in the complaint. ECF No. 24 at 15.

24   Pitre's central theory, which underlies all her claims, is that KeVita deceives consumers by

25   advertising the gut health benefits of its Sparkling Lemonade, because the product has too little

26   fiber and too much added sugar to have any benefit to a person's gut microbiome. ECF No. 20

27   ¶ 7. The alleged misrepresentations include the phrase "prebiotics for gut health" on the front

28   label of the can and the words "Trust your gut . . . your tummy . . . will thank you!" on the back of

United States District Court
Northern District of California

5

the can.  *Id.* ¶ 4 (capitalization omitted).

Pitre alleges these statements are misleading by citing a study (the "Prebiotic Study") that "suggested that the consumption of gum arabica powder," the kind of fiber KeVita adds to its Sparkling Lemonade, "can provide prebiotic benefits at a dose of 10 grams per day taken over four weeks."  *Id.* ¶ 33.  She alleges that, assuming that 10 grams of gum arabic per day were required to achieve a benefit to gut health, "a consumer would have to drink more than three cans a day for a month to derive any meaningful benefit to the gut microbiome."  ECF No. 1-1 ¶ 30.  And "[c]onsuming three cans of the Product would result in the consumption of 12 grams of added sugar per day, roughly a quarter of the recommended daily maximum of added sugar under current US dietary guidelines, and half the 25 grams of added sugar recommended as a daily maximum for women by the American Heart Association."  *Id.* ¶ 30.  "A diet that is high in processed food and added sugar can eliminate healthful bacteria in the gut and worsen early metabolic disease."  *Id.* ¶ 32.  "Thus," the complaint continues, "any hypothetically beneficial effects to the gut microbiome derived from consuming enough cans of Product to reach the 10-gram dosage at which acacia shows potential as an effective prebiotic supplement would be reduced or eliminated by the detrimental effects to the gut microbiome and other adverse health effects of 12 grams of added sugars."  *Id.* ¶ 33.

KeVita responds that Pitre's cited studies do not support her claims.  It argues that the Prebiotic Study showed that fiber from gum arabica can be beneficial to gut bacteria even at 5 grams per day and thus contradicts Plaintiff's theory of falsity.  ECF No. 24 at 15.  The motion to dismiss thus turns, in large part, on the parties' conflicting interpretations of the Prebiotic Study.

"The aim of the [Prebiotic Study] was to investigate a potential prebiotic functionality by gum arabic, and if any, establish a dose-effect relationship after a period of 4 weeks of daily consumption."  ECF No. 25-4 at 3.  The study concluded, with regard to the production of Bifidobacteria, a beneficial bacteria, that "the optimal dose with respect to the highest number of bacteria was found to be around 10 g gum arabic."  *Id.* at 5.  With regard to the production of Lactobacilli, another beneficial bacteria, an "optimum dose . . . was established at about 5–10 g."  *Id.*  Overall, "[w]ith respect to the bacterial development, within 4 weeks the present study

6

1    demonstrated that the most optimal dose of gum arabic to achieve prebiotic efficacy lies around 5–

2    10 g." *Id.* at 6.  The study did not establish a minimum effective dose.  With regard to the existing

3    science, the study noted that "no recommended daily dose [of prebiotic fiber] has been established

4    so far." *Id.* at 3.

5           The Court finds that the Prebiotic Study does not support Pitre's contention that KeVita's

6    claims about its products' prebiotic benefits are false.  Pitre's complaint says that "consumption of

7    at least 10 grams of [gum arabic] is necessary to improve gut health," ECF No. 1-1 ¶ 6, but the

8    study does not support that contention.  Pitre later characterizes the study as "*suggest[ing]* that

9    that the consumption of gum arabica powder dissolved in water can provide prebiotic benefits at a

10   dose of 10 grams per day taken over four weeks," ECF No. 1-1 ¶ 30 (emphasis added), but that is

11   not what the study says either.  What the study actually says is that "the *most optimal dose* of gum

12   arabic to achieve prebiotic efficacy lies around 5–10 g."  ECF No. 25-4 at 6.  The study says

13   nothing about the minimum amount of gum arabic to produce *some* measurable prebiotic benefit,

14   and the lowest dose it measured—5 grams per day, not 10—did produce a measurable benefit.  *Id.*

15   at 5.  Courts have not hesitated to dismiss claims where evidence does not support the claims that

16   plaintiffs have pled.  *See Housey v. Procter & Gamble Co.*, No. 21 Civ. 2286 (NRB), 2022 WL

17   874731, at *6 (S.D.N.Y. 2022), *aff'd*, 2022 WL 17844403 (2d Cir. 2022) ("Where a plaintiff has

18   chosen to use scientific evidence to state her claims, and that evidence does not support her claims,

19   plaintiff has not plausibly pled her claims."); *see also Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-

20   727-LAB-MDD, 2012 WL 5382218, at *7 (S.D. Cal. 2012) ("Ultimately, the Court cannot accept

21   that the studies Eckler cites lend 'facial plausibility' to her claims that the Equate representations

22   are false or misleading.").[2]

23          Pitre relies heavily on *Graham v. Central Garden & Pet Company*'s admonition that, in

24   examining Plaintiff's study, "the Court must draw all reasonable inferences in Plaintiff's favor at

25   _____

26   [2] The amended complaint suffers from an additional infirmity:  neither that pleading nor the Sugar
     Study defines how much sugar a person must consume to have "a diet that is high in . . . added

27   sugar."  As KeVita points out, four grams of sugar amounts to only approximately 8% of the
     FDA's Daily Value for added sugars.  *See* 21 C.F.R. § 101.9(c)(9).  Thus, even if Pitre could

28   plausibly allege that a specific amount of prebiotic fiber were necessary for gut health, it is not
     clear that she could allege that consumption of that quantity would result in a high sugar diet.

United States District Court
Northern District of California

the motion to dismiss stage." No. 22-CV-06507-JSC, 2023 WL 2744391, at *2 (N.D. Cal. Mar. 30, 2023). *Graham* is distinguishable, however. Plaintiff there sued defendant Central Garden over its Comfort Zone-branded cat products, which utilized synthetic cat hormones. *Id.* at *1. Labels on the products stated they were "'trusted' and 'proven' to 'reduce multi-cat conflict and destructive behavior,' to provide 'anxiety and stress relief,' and to 'reduce scratching' and 'urine marking.'" *Id.* Plaintiff alleged the representations were "false and misleading because [Defendant's] products do not effectively treat stress or related behaviors in cats." *Id.* Plaintiff relied on three studies finding that synthetic pheromones had no effect on cat behavior. *Id.* at *2. Central Garden asked the Court "to look beyond the complaint to the studies' limitations, including that the studies did not examine Defendant's specific products," but the Court declined. *Id.* The Court found that Central Garden's "interpretation of the studies requires the Court to draw inferences in its favor, whereas the Court must draw all reasonable inferences in Plaintiff's favor at the motion to dismiss stage." *Id.* Applying that rule, the Court found that "[t]he studies support a reasonable inference that synthetic pheromones do not calm cats." *Id.*

This case is not *Graham*. Unlike there, there is no reading of the Prebiotic Study, favorable or otherwise, consistent with the allegation that 10 grams of gum arabic per day is required to achieve a benefit to gut health. Without that allegation, Pitre's remaining allegations fail.

More apt is *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-CV-05921-WHO, 2018 WL 1569697 (N.D. Cal. Mar. 30, 2018). In that case, plaintiff alleged that Defendant's use of the word "diet" to describe its sodas was false and misleading because the aspartame in the sodas caused weight gain. *Id.* at *1. However, the studies she cited in her complaint "[did] not allege causation at all—at best, they support merely a correlation or relationship between artificial sweeteners and weight gain, or risk of weight gain." *Id.* at *6. Because there was no reading of Plaintiff's studies that supported the allegations in her complaint, the Court dismissed the allegations as implausible. *Id.* at *7. The Court in *Becerra v. Coca-Cola Co.* reached the same result. No. C 17-05916 WHA, 2018 WL 1070823 *4 (N.D. Cal. Feb. 27, 2018) ("Becerra's studies may show a strong correlation between artificial sweeteners and weight gain, and they may

raise legitimate concerns over the health value of replacing sweetened beverages with artificially sweetened ones. But Becerra's studies do not show that Diet Coke causes weight gain."). So here, the Prebiotic Study does not support the conclusion that 10 grams of fiber is necessary to achieve a prebiotic benefit, and so it does not support the allegations in Plaintiff's complaint.

### C.    Likelihood of Consumer Deception

Under the UCL, FAL, and CLRA, conduct is considered deceptive or misleading if it is likely to deceive a "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). This standard is higher than a "mere possibility" that the statement at issue "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the standard requires a likelihood "that a significant portion of the general consuming public or of targeted consumers, acting reasonable in the circumstances, could be misled." *Id.* Generally, the question of whether a business practice is deceptive is a question of fact and dismissal on this basis is granted only in "rare situation[s]." *Williams*, 552 F.3d at 939; *see also Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 584 (2022) ("Whether a reasonable consumer is deceived by advertising is not properly resolved at the pleading stage.").

The Court finds that this is the "rare situation" where dismissal of Pitre's deception claim is appropriate. Plaintiff's theory of deception is that KeVita's "label misrepresents to consumers that the Product will improve digestive health when, in fact, it does not contain enough prebiotics to have any meaningful impact on gut health, and the added sugar negates any potential gut health benefit." ECF No. 31 at 17–18. As set forth above, however, Pitre has not plausibly pled that the amount of fiber in KeVita's products is insufficient to support gut health. Accordingly, there is no basis to find that KeVita's conduct is deceptive or misleading.

### D.    Nonactionable Puffery

"Advertisements that amount to mere puffery are not actionable because no reasonable consumer relies on puffery. Factual representations, however, are actionable. The Court may determine as a matter of law whether a statement is puffery." *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) (quotation marks and citations omitted). "Non-

1    specific, non-measurable assertions are classic non-actionable puffery." *Salazar v. Honest Tea,*

2    *Inc.*, 74 F. Supp. 3d 1304, 1316 (E.D. Cal. 2014).

3          KeVita argues that its label statement "Trust your gut and grab the deliciously refreshing

4    taste of real lemons with prebiotics, your tummy and taste buds will thank you!" is nonactionable

5    puffery.  ECF No. 24 at 22–24.  Pitre responds that, viewed in the context of the rest of the

6    product label, the statement contributes to KeVita's representation that the product will improve a

7    consumer's gut health.  ECF No. 31 at 24–26.

8          *Andrade-Heymsfield v. NextFoods, Inc.* is instructive.  No. 3:21-CV-1446-BTM-MSB,

9    2023 WL 2576770 (S.D. Cal. Mar. 20, 2023).  There, the defendant manufactured and sold a

10   beverage called "GoodBelly," which the defendant promised would "[r]eboot your belly . . .

11   [b]ecause when your belly smiles the rest of you does too."  *Id.* at *1.  Like here, the plaintiff

12   alleged these statements were deceptive because they suggest that the beverage "promotes

13   digestive health, when in fact it harms digestive health" because it contains excessive sugar.  *Id.* at

14   *2.  The court concluded that the plaintiff had "plausibly alleged that the label as a whole—with

15   the phrases 'GoodBelly' and 'GoodHealth,' along with the label's suggestion that the drinks will

16   'reboot' the belly and make the belly 'smile'—is likely to be read by a reasonable consumer as

17   claiming to promote good digestive and overall health."  *Id.* at *3.  Although the statement that

18   "when your belly smiles the rest of you does too" might have been puffery when "[r]ead in

19   isolation," "when read together and in context, the Court [could not] determine that the reasonable

20   consumer would not rely on the label as promoting good digestive and overall health."  *Id.* at *4.

21         The same is true here.  The statement "your tummy and taste buds will thank you," in

22   isolation, might amount to mere puffery.  But this statement appears on a product label that names

23   prebiotics three times: in the product name itself ("Sparkling Lemonade with Prebiotics"), on the

24   front label ("prebiotics for gut health"), and in the same sentence that KeVita challenges as

25   nonactionable puffery ("Trust your gut and grab the deliciously refreshing taste of real lemons

26   with prebiotics, your tummy and taste buds will thank you!").  ECF No. 21 ¶ 4.  Taken in that

27   context, the label as a whole makes representations about the impact of its prebiotics on "gut

28   health," and the Court cannot conclude that a reasonable consumer would not rely on "your

United States District Court
Northern District of California

10

tummy . . . will thank you" as a statement about the promotion of digestive health.  *See Andrade-Heymsfield* at *4.

### E.    UCL Claim

KeVita next moves to dismiss Pitre's claims under the UCL.  "Because the UCL is written in the disjunctive, it established three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."  *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1248 (2023) (citation and quotation omitted).  "An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent."  *Id.* (citation and quotation omitted).  Pitre asserts violations of each of the three prongs.  *See* ECF No. 21 ¶¶ 80–103.

"The UCL does not define 'unfair,' and the 'standard for determining what business acts or practices are "unfair" in consumer actions under the UCL is currently unsettled.'"  *Capito v. San Jose Healthcare Sys., LP*, 17 Cal. 5th 273, 284 (2024) (quoting *Zhang v. Superior Court*, 57 Cal. 4th 364, 380 n.9 (2013)).  One frequently cited test of whether a business practice is unfair

> involves an examination of [that practice's] impact on its alleged
> victim, balanced against the reasons, justifications and motives of
> the alleged wrongdoer.  In brief, the court must weigh the utility of
> the defendant's conduct against the gravity of the harm to the alleged
> victim . . . .  [A]n "unfair" business practice occurs when that
> practice offends an established public policy or when the practice is
> immoral, unethical, oppressive, unscrupulous or substantially
> injurious to consumers.

*Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718–19 (2001) (citation modified).

The Court will dismiss Pitre's UCL claim.  As stated above, she has not plausibly alleged that KeVita's labels are "fraudulent."  Nor has she established that KeVita's conduct was "unlawful" or "unfair":  her claims under both prongs depend on the allegation that KeVita is "promising a health benefit that the Product cannot confer" because consumers must drink more than three cans of KeVita's Sparkling Lemonade to improve gut health.  ECF No. 31 at 28.  But Plaintiff has not plausibly alleged that consumption of that amount of KeVita's product is actually required.  Accordingly, she fails to allege that KeVita's conduct violates any law, that consumers have suffered an injury, or that KeVita's "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."

United States District Court
Northern District of California

**F.    Non-Monetary Relief[3]**

Lastly, KeVita seeks to dismiss Pitre's requests for non-monetary relief.

**1.    Injunctive Relief**

Kevita challenges Pitre's request for injunctive relief.  It argues that Pitre "lacks Article III standing because she can avoid any future injury simply by reviewing the accurate disclosures on the Products' labels."  ECF No. 24 at 26.  KeVita's argument fails in light of the Ninth Circuit's holding in *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956 (9th Cir. 2018).  There, the court held that

> a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm.

*Id.* at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  The *Davidson* court offered as an example a consumer who plausibly alleges "that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."  *Id.* at 970 (citing *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015)).  Pitre has alleged exactly that here.  *See* ECF No. 21 ¶ 20.

KeVita attempts to distinguish *Davidson* by misconstruing Pitre's underlying theory of deception, arguing that Pitre "does not need to rely on the challenged statements to determine whether the products contain a certain amount of prebiotic fiber or added sugar" because she can learn that information from the nutritional facts label.  ECF No. 34 at 19.  But Pitre is not seeking to redress Kevita's statements about prebiotic quantity, but rather its allegedly false statements about gut health benefits.  Pitre cannot verify those statements via the nutritional label alone, and thus, Kevita's argument fails.  The Court finds Pitre has Article III standing to seek injunctive relief.

_____

[3] Although the Court has dismissed Pitre's claims on the merits, it addresses her claims for non-monetary relief to provide guidance in the event of an amended complaint.

United States District Court
Northern District of California

### 2. Equitable Relief

Pitre's complaint seeks "damages, restitution, and/or disgorgement." ECF No. 21 at 22. KeVita challenges Pitre's requests for restitution and disgorgement, relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) to argue that Pitre cannot seek equitable relief when she has an adequate remedy at law. ECF No. 24 at 27. But "*Sonner* has limited applicability to the pleading stage." *Warren v. Whole Foods Mkt. Cal., Inc.*, No. 21-cv-04577-EMC, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022). At the pleading stage, it is sufficient for a "plaintiff to plead that her legal remedies are inadequate or plead equitable claims in the alternative because of legal remedies are inadequate." *Brown v. Van's Int'l Foods, Inc.*, No. 22-cv-00001-WHO, 2022 WL 1471454, at *13 (N.D. Cal. May 10, 2022). This is what Pitre has alleged here. ECF No. 21 ¶¶ 78, 100–02. Accordingly, the Court declines to dismiss her requests for equitable relief.

### CONCLUSION

For the foregoing reasons, the Court grants KeVita's motion to dismiss. The Court grants leave to file an amended complaint within 21 days solely to correct the deficiencies identified in this order. If no amended complaint is timely filed, the case will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: August 8, 2025



_____
JON S. TIGAR
United States District Judge